**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CRIMINAL ACTION NO. 5:21-CR-012-TBR**

**UNITED STATES OF AMERICA,**                                                   **PLAINTIFF**

**v.**

**CORIE JONES,**                                                                                     **DEFENDANT**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendant Corie Jones's Motion to Suppress Evidence and Request for Hearing Thereon, [DN 14]. The United States filed a response in opposition to both the request for a hearing and the Motion to Suppress Evidence. [DN 15]. By Order entered November 8, 2021, the Court granted Defendant's request for a hearing, [DN 16]. The suppression hearing was held on January 25, 2022, at which time the Court heard argument and evidence[1] from the parties and entered a briefing schedule. [DN 18; DN 20 (Official Transcript)]. Defendant has filed his post-hearing brief, [DN 27], and the United States has filed a response brief, [DN 28]. Having considered the parties' arguments, the evidence, and the applicable law, the Court will deny Defendant's Motion to Suppress Evidence, [DN 14], for the reasons stated herein.

---

[1] By agreement of the parties, Defendant submitted Defense Exhibits 1–4 during the suppression hearing, and supplemented the record with Exhibit 5, [DN 19], and Exhibits 6–8, [DN 22].

## I.  BACKGROUND

On October 22, 2020, Hopkinsville Police Sergeant Alexander Cortez observed Defendant operating his motor vehicle without a seatbelt. As a result, Sergeant Cortez conducted a traffic stop of Defendant's vehicle. Sergeant Cortez testified that, upon approaching the driver's side, he smelled an odor of marijuana emanating from the vehicle. After calling for backup, Sergeant Cortez asked Defendant if he had been drinking or using drugs. Defendant replied in the negative. Sergeant Cortez then asked Defendant, "Who were you smoking weed in the car with?" In response, Defendant explained that his younger brother had been smoking near his car earlier in the day. Defendant was not read his *Miranda* rights prior to this line of questioning.

Around this time, Officer John Stallons arrived on the scene. Defendant was ordered to exit his vehicle and was told that it would be searched due to the smell of marijuana. Defendant exited the vehicle but told the officers that he did not consent to a search of his vehicle. He was ultimately detained in one of the police cruisers. The officers began searching the car, and another officer, Officer Nina Wright, arrived on the scene. When Sergeant Cortez began the search, Officer Wright, at the rear of the vehicle, commented that she smelled a dead animal. The officers continued their search, uncovering a loaded firearm, ammunition, and a large quantity of cocaine and marijuana in the center console of the vehicle. They also uncovered Defendant's cell phone. Defendant was then arrested and read his *Miranda* rights. He was ultimately charged in federal court with possession with intent to distribute a mixture and substance containing a detectable amount of cocaine, possession of a firearm by a prohibited person, and possession of a firearm in furtherance of a drug trafficking crime. [DN 1].

Defendant now moves to suppress "any evidence directly or indirectly obtained as a result or consequence of an illegal detention, search, and arrest on or about October 22, 2020" and "any statements directly or indirectly obtained as a result or consequence of an illegal detention, arrest, and custodial interrogation on or about October 22, 2020." [DN 14, p. 1]. He specifically challenges (1) the traffic stop; (2) the extended duration of the stop; (3) the questioning of Defendant during the traffic stop; and (4) the warrantless search of Defendant's automobile. The Court addresses each argument in turn. [DN 27].

## II.   ANALYSIS

### A.  The Initial Traffic Stop

To the extent Defendant challenges the initial traffic stop as an improper seizure under the Fourth Amendment, the Court will deny Defendant's motion. It is true that stopping and detaining a motorist constitutes a "seizure" "even if 'the purpose of the stop is limited and the resulting detention quite brief.'" *United States v. Bell*, 555 F.3d 535, 539, (6th Cir. 2009) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). However, an officer may conduct a traffic stop, thereby "seizing" the motorist, when he or she has probable cause to believe that the motorist violated a traffic law. *Id.* (citation omitted).

In this case, Officer Cortez observed Defendant operating a motor vehicle without wearing a seatbelt. Operating a motor vehicle without wearing a seatbelt is a violation of KRS 189.125(6), which prohibits one from operating a motor vehicle "unless the driver and all passengers are wearing a properly adjusted and fastened seat belt." Based on his observations of Defendant, Officer Cortez had probable cause to believe that Defendant was violating a traffic law. While Defendant argues that the stated reason for the stop may have been pretextual, he also acknowledges that such pretextual stops are permitted under the law, so long as the officer has

3

probable cause to believe a traffic violation occurred. [DN 27, p. 8]; *see also Whren v. United States*, 517 U.S. 806, 812–13 (1996). In this case, probable cause existed. The Court therefore finds that the initial traffic stop was not an unconstitutional seizure.

### B. Detention After the Initial Stop

The Court next considers whether the continued detention of Defendant during the traffic stop was an unconstitutional seizure. An officer "may not detain the motorist 'any longer than is reasonably necessary to issue the traffic citation' unless the officer develops a reasonable suspicion that the individual has engaged in more extensive criminal conduct." *Bell*, 555 F.3d at 539 (quoting *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002)); *see also United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005). "Reasonable suspicion" has been defined as "more than an ill-defined hunch," and "it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity." *United States v. Collazo*, 818 F.3d 247, 257 (6th Cir. 2016) (quoting *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008)) (internal quotation marks omitted). Further, the officer "must point to specific and articulable facts supporting his suspicion." *Id.* (quoting *United States v. Perez*, 477 F. App'x 337, 341 (6th Cir. 2012)) (internal quotation marks omitted). This standard is less demanding than the probable-cause standard. *Id.* (citations omitted).

In this case, even if the duration of the stop was extended beyond its original purpose, the officer had developed the reasonable suspicion necessary to extend the stop. When Officer Cortez approached the car, he smelled the odor of marijuana. At that point, Officer Cortez had a reasonable suspicion, supported by articulable facts, that Defendant had "engaged in more extensive criminal conduct." He was therefore permitted to extend the stop beyond its initial

scope. The Court therefore finds that the officer's extension of the duration of the stop beyond its original purpose does not amount to an unconstitutional seizure under the facts of this case.

### C. Pre-*Miranda* Questioning

To the extent Defendant argues that Officer Cortez's questioning during the traffic stop amounted to a custodial interrogation, thereby requiring a reading of his *Miranda* rights, the Court will deny Defendant's motion. Traffic stops are generally considered investigatory stops subject to the principles announced in *Terry v. Ohio*, 392 U.S. 1 (1968) and its progeny. *See United States v. Everett*, 602 F.3d 484, 488 (6th 2010). In other words, a traffic stop is considered to be a *Terry* stop. To determine if a *Terry* stop has been converted into a formal arrest, thereby requiring *Miranda* rights, the Court must consider the totality of the circumstances. *United States v. Wright*, 220 F. App'x 417, 420 (6th Cir. 2007). In doing so, the Court focuses on:

> (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police.

*Id.* at 421 (quoting *United States v. Salvo*, 133 F.3d 943, 950 (6th Cir. 1998)).

In the present case, a reasonable person would not have considered himself "in custody" during the traffic stop. It is true that Defendant was not free to leave when stopped by Officer Cortez; however, several factors suggest he was not "in custody." First, "[t]he purpose of the questioning after the stop was to quickly confirm or dispel the officer's suspicion of criminal activity." *Id.* at 421. The questioning was brief and focused on this narrow topic. Jones's answer that his brother had been smoking marijuana near the car earlier "reasonably generated more suspicion, which permitted the officer to extend questioning under *Terry*." *Id.* Further, Jones was

5

questioned for only a few minutes before his car was searched and he was arrested. *Id.* (noting that the defendant was questioned for fewer than fifteen of the twenty-four minutes between the traffic stop and his arrest).

Defendant's argument with respect to this issue appear focused on the pre-search questioning of Defendant, while he was still seated in his car. However, the Court notes that Jones was eventually detained in a police cruiser so officers could safely search his car. It is worth mentioning that detention in a police cruiser (or the use of handcuffs) does not transform a *Terry* stop into an arrest, "so long as the circumstances warrant that precaution." *Houston v. Clark County Sherriff Deputy John Does 1–5*, 174 F.3d 809, 814–15 (6th Cir. 1999) (citations omitted). Here, the officers needed to search the vehicle, but Jones had become somewhat aggressive, so these steps were necessary to ensure the safety of the officers.

Under the totality of these circumstances, the Court finds that Officer Cortez's questioning of Defendant during the traffic stop was permitted under *Terry v. Ohio* and did not require a reading of the *Miranda* rights.

### D. Warrantless Search

To the extent the defendant argues that the search of his car violated the Fourth Amendment because the officers lacked a warrant, the Court will deny Defendant's motion. The Fourth Amendment imposes a per se requirement that police officers obtain a warrant prior to conducting a search. *United States v. Galaviz*, 645 F.3d 347, 354–55 (6th Cir. 2011) (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999)). However, there are several exceptions to this warrant requirement. "The automobile exception allows officers to search a vehicle without a warrant if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *Id.* at 355 (quoting *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007)). As the Sixth

Circuit has explained, "It is blackletter law that the police can lawfully search a car without a warrant if they have probable cause." *Hernandez v. Boles,* 949 F.3d 251, 259 (6th Cir. 2020).

The Sixth Circuit has also held on numerous occasions that an officer's detection of the odor of marijuana alone constitutes probable cause to believe that marijuana will be found in the vehicle. *See United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013); *United States v. Bailey*, 407 F. App'x 27, 28–29 (6th Cir. 2011); *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004); *United States v. Garza*, 10 F. 3d 1241, 1246 (6th Cir. 1993); With that probable cause, the officer may search the vehicle. *See, e.g.*, *Foster*, 376 F.3d at 583.

In the present case, Officer Cortez smelled marijuana when he approached the vehicle. At that point, he had probable cause to believe marijuana would be found in Defendant's vehicle, and he could therefore conduct a warrantless search of the vehicle, including small, concealed areas—like the center console—where the marijuana might be found. *See generally United States v. Ross*, 456 U.S. 798, 824 (1982). The fact that Defendant told the officers that he did not consent to a search of his vehicle is immaterial. Because the officers had probable cause to believe that drugs would be found in the car, they did not need to secure a warrant, nor did they need Defendant's consent.

Further, the fact that the other officers on the scene did not smell marijuana is immaterial. First, the Court notes that the other officers on the scene did not approach the driver's side window like Officer Cortez, and they arrived a few minutes after his initial stop. It is not surprising, then, that they did not smell an odor of marijuana. Nor is it surprising that there was no "visible marijuana or contraband of any kind," as Jones admitted to the officers that his brother had been smoking marijuana outside the car earlier in the evening. Stated another way, these facts do not hurt Officer Cortez's credibility. Additionally, the Court is unaware of any

case law or legal authority—and Jones cites none—that would require independent corroboration of the officer's detection of the odor of marijuana. In fact, the Sixth Circuit has consistently held that a single officer's detection of the odor of marijuana, without more, is sufficient to establish probable cause, as noted above. Further, the Court had the opportunity to witness Officer Cortez as he testified under oath and on his body cam footage and finds him to be credible. The Court therefore finds that the search of the car did not violate the Fourth Amendment.

### III. CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that Defendant's Motion to Suppress Evidence, [**DN 14**], is **DENIED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

March 9, 2022

cc: Counsel of Record